## No. 21-20560

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Luis E. Class,

*Plaintiff-Appellant*

v.

Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division; Kimberly Klock; Kelly L. Strong; Christopher S. Lacox; Lisa M. Nichols; Candy L. Montgomery; Cesar Trevino; Isaac J. Clark,

*Defendants-Appellees*

---

On Appeal from the United States District Court
for the Southern District of Texas
Case No. 4:20-cv-3440

---

### Plaintiff-Appellant's Opening Brief

---

Oren Nimni
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, #26152
Washington, DC 20001
(202) 540-0029

Ginger D. Anders
Sarah Weiner*
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
Suite 500E
Washington, DC 20001
P: (202) 220-1100
F: (202) 220-2300
Sarah.Weiner@mto.com

*Admitted in New York only; Practicing under the supervision of District of Columbia Bar members

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

No. 21-20560 (5th Cir.)

Luis E. Class,

*Plaintiff-Appellant*

v.

Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division; Kimberly Klock; Kelly L. Strong; Christopher S. Lacox; Lisa M. Nichols; Candy L. Montgomery; Cesar Trevino; Isaac J. Clark,

*Defendants-Appellees*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. **Plaintiff-Appellant:**

   Luis E. Class

2. **Defendants-Appellees:**

   Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division; Kimberly Klock; Kelly L. Strong; Christopher S. Lacox; Lisa M. Nichols; Candy L. Montgomery; Cesar Trevino; Isaac J. Clark

3. **Counsel for Plaintiff-Appellant:**

   Oren Nimni; Samuel Weiss; Rights Behind Bars; Ginger D. Anders; Sarah Weiner; Munger, Tolles & Olson LLP

i

**4.     Counsel for Defendants-Appellees:**

Amy Elizabeth Pletscher; Office of the Texas Attorney General

Respectfully submitted,

Date: January 13, 2022

*/s/ Sarah Weiner*
Sarah Weiner*
Counsel for Plaintiff-Appellant
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW, Suite 500E
Washington, DC 20001
P: (202) 220-1100
Sarah.Weiner@mto.com

*Admitted in New York only; Practicing under the
supervision of District of Columbia Bar members

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Luis E. Class requests oral argument, as he believes it could significantly aid the decisional process in this case.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ............................................................i

STATEMENT REGARDING ORAL ARGUMENT ..............................................iii

TABLE OF CONTENTS..........................................................................................iv

TABLE OF AUTHORITIES .....................................................................................v

INTRODUCTION ....................................................................................................1

STATEMENT OF JURISDICTION.........................................................................3

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................4

STATEMENT OF THE CASE.................................................................................4

      A.    Factual Background..............................................................................4

      B.    Procedural History...............................................................................7

SUMMARY OF ARGUMENT ..............................................................................10

STANDARD OF REVIEW ....................................................................................13

ARGUMENT ..........................................................................................................13

I.     THE DISTRICT COURT ERRED IN DISMISSING CLASS'S ADA AND RA CLAIMS BY APPLYING THE WRONG TEST FOR DISABILITY-BASED DISCRIMINATION. ................................................13

II.    IN DISMISSING CLASS'S SECTION 1983 CLAIMS, THE DISTRICT COURT MISCONSTRUED THE COMPLAINT'S ALLEGATIONS.....................................................................................19

III.   THE DISTRICT COURT ERRED IN DISMISSING CLASS'S OFFICIAL-CAPACITY ADA AND RA CLAIMS......................................25

CONCLUSION ......................................................................................................31

CERTIFICATE OF SERVICE ..............................................................................32

CERTIFICATE OF COMPLIANCE......................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alexander v. Choate*,
  469 U.S. 287 (1985)........................................................................15

*Bazrowx v. Scott*,
  136 F.3d 1053 (5th Cir. 1998) .......................................................25

*Bennett-Nelson v. Louisiana Bd. of Regents*,
  431 F.3d 448 (5th Cir. 2005) ....................................................14, 15

*Block v. Texas Bd. of L. Examiners*,
  952 F.3d 613 (5th Cir. 2020) ..................................................*passim*

*Brand Coupon Network, LLC v. Catalina Mktg. Corp.*,
  748 F.3d 631 (5th Cir. 2014) ....................................................11, 19

*Cadena v. El Paso Cnty.*,
  946 F.3d 717 (5th Cir. 2020) .........................................................18

*Calhoun v. Hargrove*,
  312 F.3d 730 (5th Cir. 2002) ..............................................19, 21, 24

*Cantwell v. Sterling*,
  788 F.3d 507 (5th Cir. 2015) .........................................................29

*Connors v. Hulipas*,
  No. 4:17-CV-1512, 2020 WL 12632013 (S.D. Tex. Feb. 7, 2020),
  *appeal dismissed sub nom. Connors v. Halupis*, 849 F. App'x 132
  (5th Cir. 2021), *appeal docketed*, No. 21-20598 (5th Cir. Nov. 16,
  2021) ............................................................................................28

*Davis v. United States*,
  597 F.3d 646 (5th Cir. 2009) .........................................................28

*Delano-Pyle v. Victoria Cnty., Tex.*,
  302 F.3d 567 (5th Cir. 2002) .........................................................14

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Epley v. Gonzalez*,
860 F. App'x 310 (5th Cir. 2021) ........................................................17

*Equal Access for El Paso, Inc. v. Hawkins*,
509 F.3d 697 (5th Cir. 2007) ...............................................................29

*Frame v. City of Arlington*,
657 F.3d 215 (5th Cir. 2011) ................................................13, 14, 16

*Franklin v. Banks*,
979 F.2d 1330 (8th Cir. 1992) .............................................................22

*Furtado v. Bishop*,
604 F.2d 80 (1st Cir. 1979)..................................................................23

*Garner v. Moore*,
536 F. App'x 446 (5th Cir. 2013) ........................................................20

*Hale v. King*,
642 F.3d 492 (5th Cir. 2011) ...............................................................27

*Hernandez v. Velasquez*,
522 F.3d 556 (5th Cir. 2008) .........................................................10, 23

*Hudson v. Univ. of Tex. Med. Branch*,
441 F. App'x 291 (5th Cir. 2011) ........................................................20

*Jackson v. Cain*,
864 F.2d 1235 (5th Cir. 1989) .............................................................21

*Johnson v. Atkins*,
999 F.2d 99 (5th Cir. 1993) ...........................................................19, 28

*Jones v. Hearn*,
248 F. App'x 568 (5th Cir. 2007)....................................................23, 24

*Kemp v. Holder*,
610 F.3d 231 (5th Cir. 2010) ...............................................................14

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Lee v. Dallas Cnty.*,
    No. 3:19-CV-2690, 2020 WL 7388602 (N.D. Tex. Dec. 16, 2020) ..................28

*Legate v. Livingston*,
    822 F.3d 207 (5th Cir. 2016) ................................................................13

*Lollar v. Baker*,
    196 F.3d 603 (5th Cir. 1999) ...............................................................29

*McFadden v. Lucas*,
    713 F.2d 143 (5th Cir. 1983) ......................................................*passim*

*Miraglia v. Bd. of Supervisors of Louisiana State Museum*,
    901 F.3d 565 (5th Cir. 2018) ...........................................10, 14, 15, 16

*Moawad v. Childs*,
    673 F.2d 850 (5th Cir. 1982) ...............................................................25

*Morris v. Livingston*,
    739 F.3d 740 (5th Cir. 2014) ...............................................................30

*Moss v. Harris Cnty. Constable Precinct One*,
    851 F.3d 413 (5th Cir. 2017) ...............................................................30

*Pena v. United States*,
    157 F.3d 984 (5th Cir. 1998) ...............................................................25

*PGA Tour, Inc. v. Martin*,
    532 U.S. 661 (2001) ....................................................................13, 14

*Smith v. Harris Cnty., Texas*,
    956 F.3d 311 (5th Cir. 2020) ...............................................................18

*Smith v. Hood*,
    900 F.3d 180 (5th Cir. 2018) ...............................................................13

*Swindol v. Aurora Flight Scis. Corp.*,
    805 F.3d 516 (5th Cir. 2015) ...............................................................29

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Tennessee v. Lane*,
  541 U.S. 509 (2004)............................................................................15

*United States v. Georgia*,
  546 U.S. 151 (2006)......................................................11, 19, 26, 27

*Valentine v. Collier*,
  978 F.3d 154 (5th Cir. 2020) ............................................................18

*Valentine v. Collier*,
  993 F.3d 270 (5th Cir. 2021) ...................................................*passim*

*Wallace v. Owens*,
  48 F. App'x 105 (5th Cir. 2002) ......................................................21

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. VIII....................................................................*passim*

U.S. Const. amend. XIV ...................................................................*passim*

**FEDERAL STATUTES**

28 U.S.C. § 1291.....................................................................................3

28 U.S.C. § 1331.....................................................................................3

28 U.S.C. § 1343.....................................................................................3

28 U.S.C. § 1915A..................................................................................8

Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*........................*passim*

  29 U.S.C. § 701......................................................................................3

  29 U.S.C. § 794......................................................................................7

  29 U.S.C. § 794(a).................................................................................14

42 U.S.C. § 1983...............................................................................*passim*

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

42 U.S.C. § 2000d-7(a)(1) ..............................................................12, 27

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* .............*passim*

   42 U.S.C. § 12101 .............................................................................3

   42 U.S.C. § 12101(b)(4) ...................................................................26

   42 U.S.C. § 12131 .............................................................................7

   42 U.S.C. § 12132 ...........................................................................14

   42 U.S.C. § 12202 ...........................................................................26

## RULES

Fed. R. App. P. 43(c) ......................................................................30

Fed. R. Civ. P. 12(b)(1) ...................................................................13

Fed. R. Civ. P. 12(b)(6) ..............................................................13, 25

## OTHER AUTHORITIES

Texas Department of Criminal Justice, Agency Operating Budget
   2020 (Aug. 21, 2019), https://www.tdcj.texas.gov/documents/bfd/
   FY2020_Operating_Budget.pdf .......................................................29

Texas Department of Criminal Justice, Agency Operating Budget
   2021 (Aug. 14, 2020), https://www.tdcj.texas.gov/documents/bfd/
   FY2021_Operating_Budget.pdf; ......................................................29

Texas Department of Criminal Justice, Agency Operating Budget
   2022 (Aug. 27, 2021), https://www.tdcj.texas.gov/documents/bfd/
   FY2022_Operating_Budget.pdf; ......................................................28

## INTRODUCTION

Luis E. Class ("Class") is a veteran with disabilities who injured his back during military service.  He has limited mobility and walks with a cane.  Class is also an inmate in the custody of the Texas Department of Criminal Justice (TDCJ).  To accommodate his disabilities, the TDCJ has placed various medical restrictions on Class's housing and work assignments.

This case arises out of two incidents at the Ellis Unit of the TDCJ.  The first occurred in March 2020, when—during an emergency situation elsewhere in the unit—officers instructed Class and his fellow inmates to sit on the floor and face the wall.  Class informed the officers that he could not sit on the ground due to his back injuries, but the officers insisted that Class be seated anyway.  When Class could not comply, Captain Candy L. Montgomery punished Class by sending him to segregation for six hours.

The second episode occurred in April 2020, when Class began running a fever and had to be medically isolated.  Class was relocated four times over the course of several days.  Each move required Class to change floors; and each time Class moved, TDCJ officers required him to carry all his belongings (including his 20-pound mattress) up or down the stairs.  When Class asked for assistance, Captain Cesar Trevino refused.

After exhausting his remedies under the prison grievance system, Class filed a complaint alleging, as relevant here, violations of the Americans With Disabilities Act (ADA), the Rehabilitation Act (RA), and the Eighth Amendment to the U.S. Constitution.  The court dismissed with prejudice Class's ADA, RA, and Eighth Amendment claims for failure to state a claim on which relief can be granted.  The district court separately dismissed Class's official-capacity claims, including his ADA and RA claims, as barred by state sovereign immunity.

The district court was incorrect.  The court held that Class's complaint failed to state a claim under the ADA or RA because Class "was treated the same as other inmates."  ROA.292.  But that is not the test for disability-based discrimination. Equal treatment does not disprove a violation of the ADA of RA.  Just the opposite is true:  Where a prisoner with disabilities requires a reasonable accommodation, prison officials' insistence on treating that prisoner the same as inmates without disabilities constitutes an actionable failure to accommodate.  That was the case for Class.

With respect to Class's Eighth Amendment claims, the district court concluded that "mere threatening words" cannot give rise to a constitutional violation, and that "prison conditions may be restrictive and even harsh without running afoul of the Eighth Amendment."  ROA.294 (citation omitted).  But the district court misconstrued the complaint:  Class does not allege that he suffered

psychic injury from hollow threats, nor that his conditions of confinement were themselves cruel and unusual.  Rather, Class alleges that Captains Trevino and Montgomery inflicted actual—and unconstitutional—punishment upon him by ordering him to perform tasks beyond his physical abilities, and disciplining him when he could not comply.

Finally, the district court erred in dismissing Class's official-capacity claims for damages under the ADA and RA.  Those claims are not barred by sovereign immunity, as the ADA abrogates state sovereign immunity in the circumstances presented here, and the TDCJ waived its immunity under the RA.

The district court's order dismissing Class's complaint with prejudice should be reversed.

## STATEMENT OF JURISDICTION

Class asserted claims against defendants under 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*  ROA.11, 26, 28, 288.  The district court, which had jurisdiction under 28 U.S.C. §§ 1331 and 1343, entered a final judgment dismissing Class's complaint with prejudice on September 30, 2021.  ROA.296.  Class filed a timely notice of appeal dated October 6, 2021, which the Clerk docketed on October 12, 2021.  ROA.297.  This Court has jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

3

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.   Whether the district court erred in dismissing Class's ADA and RA claims because Class was treated the same as other inmates?

2.   Whether the district court erred in dismissing Class's Eighth Amendment claims based on an inappropriately narrow reading of the complaint?

3.   Whether the district court erred in concluding that Class's ADA and RA claims for damages are barred by sovereign immunity?

## STATEMENT OF THE CASE

### A.    Factual Background

Luis Class is an inmate with disabilities presently in the custody of the Texas Department of Criminal Justice (TDCJ).  ROA.12.  While serving in the U.S. Army, Class suffered an injury to his lower back that required him to undergo several surgeries.  ROA.26.  Those surgeries left Class temporarily paralyzed from the waist down, and he continues to suffer from chronic low back pain caused by herniated nucleus pulposus, bilateral neural stenosis, disc bulge, annular tear, and central canal stenosis.  ROA.26, 67, 69.  Class requires a cane for walking.  ROA.69.  He has also been diagnosed with high blood pressure and bronchial asthma.  ROA.67.  In light of these conditions, the Social Security Administration determined that Class has been permanently disabled since 2011.  ROA.69.

The events giving rise to this case occurred at the Ellis Unit of the TDCJ, where Class was confined at the time.[1]  ROA.12-13.  On March 23, 2020, Class was waiting in line to receive medication when an incident occurred in the dining hall. ROA.13.  An officer instructed Class and the other inmates in the medication line to sit on the floor facing the wall.  ROA.12.  Class turned towards the wall, but he could not sit.  ROA.13.  He told the officer that he could not sit down because of his lower back surgeries, but the officer insisted that Class be seated.  ROA.13.  Attempting to comply, Class squatted as low as he could; when he grew too tired, he laid on the floor with his knees bent.  ROA.13.

Captain Candy Montgomery then approached Class and commanded him to "sit your ass up."  ROA.13-14.  Class informed Captain Montgomery that his back surgeries prevented him from sitting on the floor.  ROA.14.  Captain Montgomery nevertheless told Class that if he did not sit, she would "drag [him] to the F-building," where the segregation cells are located.  ROA.14.  Class responded, "Ma['a]m, do whatever you have to do, but . . . I can't sit on the floor."  ROA.14. Captain Montgomery then instructed a subordinate officer to "pick [up]" Class and take him to segregation.  ROA.14.

---

[1] The TDCJ has since transferred Class to a different facility.  *See* ROA.214.

Class was forced to climb stairs on his way to the F-building, despite his disability. ROA.14, 31. While in segregation, Class was denied utensils, a drinking cup, and a mattress. ROA.14. Class was eventually permitted to return to his assigned building after six hours. ROA.14. The incident exacerbated Class's chronic injury, "mak[ing] [his] disabilities worse and painful[]." ROA.14.

About a month later, on April 21, 2020, Class developed a fever and had to be quarantined. ROA.15. An officer instructed Class to gather his belongings, including his 20-pound mattress, and carry them up to the third floor. ROA.15-16. Class told the officer about his disabilities, but he was offered no assistance. ROA.15. Class thus took three trips up and down the stairs, using his cane for support, as he shuttled his mattress and belongings to the third floor. ROA.16. The following day, Class was instructed to pack up his belongings and carry them down to the second floor. ROA.16. The day after that, Class was again told to move to the first floor. ROA.16. With each move, Class was required to carry all his personal effects and mattress by himself. ROA.16.

A short time later, Class was instructed by an officer to return to the second floor. Class explained to the officer his situation: that he was disabled, that he was medically restricted from climbing, and that he had been required to go up and down the stairs several times over the past few days. ROA.16, 35; *see* ROA.45 (TDCJ record listing "Ground Floor Only," "No Climbing," and "No Lifting" restrictions).

6

The officer consulted his superior, Captain Cesar Trevino, who responded that "no [medical] restriction[s] are allowed in isolation[]." ROA.16. If Class did not obey commands to climb stairs, Captain Trevino warned, Class would be removed from minimum custody and subjected to disciplinary action. ROA.16. Left with no other option, Class again moved himself and his belongings up the stairs, further aggravating his injuries and causing pain in his lower back. ROA.16.

### B.    Procedural History

1.    After exhausting administrative remedies available under the TDCJ's two-step grievance process, *see* ROA.14-16, 27, 31-38, Class filed a complaint in the U.S. District Court for the Southern District of Texas. Proceeding *pro se*, Class asserted claims under Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131 *et seq.*; Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794; and 42 U.S.C. § 1983. *See* ROA.11, 26, 28. Specifically, Class alleged that the TDCJ officers' conduct constituted unlawful disability-based discrimination within the meaning of the ADA and RA, and that Captains Trevino and Montgomery violated his Eighth Amendment rights.[2] ROA.13, 26, 28. Class named several TDCJ officials as defendants, including Lorie Davis, former Director of the TDCJ's Correctional Institutions Division; Kelly L. Strong, Warden of the

---

[2] Class asserted other claims against additional officers arising out of separate incidents. He does not press those claims on appeal.

7

TDCJ's Ellis Unit; Christopher S. Lacox, Assistant Warden of the Ellis Unit; Captain Montgomery; and Captain Trevino.  ROA.11, ROA.132.  Class sued each defendant in their individual and official capacities.  ROA.13.

2.     The district court dismissed defendants Davis, Strong, and Lacox *sua sponte* in a screening order issued under 28 U.S.C. § 1915A.  ROA.132; *see* 28 U.S.C. § 1915A (requiring district courts to screen prisoner suits).  Explaining that "supervisory officials cannot be held vicariously liable under 42 U.S.C. § 1983 for acts of their subordinates on a theory of *respondeat superior*," the court concluded that Class "fail[ed] to state a claim for relief against" Davis, Strong, and Lacox because he "allege[d] liability based only on their supervisory roles."[3]  ROA.133. The district court did not discuss whether Class had stated a claim against the defendants under the ADA or RA.  Class filed a motion for reconsideration, *see* ROA.139, which the Court denied, *see* ROA.142.

3.     The remaining defendants moved to dismiss.[4]  ROA.167-81.  On September 30, 2021, the district court granted that motion and dismissed Class's complaint with prejudice.  ROA.295.

---

[3] The court also concluded that Class failed to state a claim against Strong and Lacox based on their allegedly inadequate handling of Class's grievances.  ROA.133.  Class does not challenge that determination on appeal.

[4] While the defendants' motion to dismiss was pending, Class sought leave to amend his complaint.  ROA.220-30.  The district court denied Class's request.  ROA.231-32.

As an initial matter, the court concluded that sovereign immunity bars Class's official-capacity claims. ROA.291. The court explained that the Eleventh Amendment proscribes suits for damages against a state, and that "[a] suit for damages against a state official in his official capacity is not a suit against the individual, but against the state." ROA.291. The court did not separately analyze Class's official-capacity claims under the ADA and RA.

Turning to Class's personal-capacity claims, the district court held that Class had failed to state a claim on which relief could be granted under the ADA and RA. ROA.291-92. With respect to both claims, the court "[a]ssum[ed] that Class sufficiently plead[ed] that he has a qualifying disability" but concluded that, because Class "was treated the same as other inmates," he had failed to allege "that he was denied the benefits of any services, programs, or activities, . . . [or] that he was discriminated against by reason of his disability." ROA.292.

Finally, the court dismissed Class's Section 1983 claims against Captains Trevino and Montgomery on the ground that the complaint failed to allege an Eighth Amendment violation. ROA.294. Characterizing the officers' conduct as "mere threatening words," the court explained that, "[a]s a rule, mere threatening language and gestures of a custodial officer do not . . . amount to a constitutional violation." ROA.294 (quoting *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir. 1983)). With respect to Class's claim against Captain Montgomery, the court further observed that

9

"prison conditions may be restrictive and even harsh without running afoul of the Eighth Amendment."  ROA.294 (quoting *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008)).

**4.**    The district court entered a final judgment dismissing the case with prejudice.  ROA.296.  Class filed a timely notice of appeal.  ROA.297.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's order dismissing the complaint with prejudice.

**I.**    The district court erred in dismissing Class's ADA and RA claims for failure to state a claim on which relief can be granted.  Contrary to the district court's holding, the complaint adequately alleges that Class was discriminated against "by reason of his disability," *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 574 (5th Cir. 2018) (citation omitted), because a plaintiff can demonstrate such discrimination "by showing that the defendants have failed to make reasonable accommodations," *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021).  The fact that Class "was treated the same as other inmates, *i.e.*, ordered to sit on the floor and threatened with disciplinary action when he failed to do so," thus *supports* Class's contention that the defendants unlawfully refused to reasonably accommodate his disability.  ROA.292.  The complaint's allegation that TDCJ officers denied Class reasonable accommodations—*e.g.*, refused to allow him to

face the wall without sitting, and denied him assistance in climbing the stairs—is sufficient to state a claim for violations of the ADA and RA.

II.      The district court also erred in dismissing Class's Section 1983 claims for violations of the Eighth Amendment's prohibition on cruel and unusual punishment.   The complaint alleges that Captain Trevino forced Class to climb several flights of stairs while carrying a heavy load, even though he was medically restricted from doing so.   The complaint further alleges that Captain Montgomery ordered Class to do something that he could not physically do, and then punished Class with a stint in segregation when he failed to comply.   Neither defendant's conduct can rightly be regarded as "mere threatening words," ROA.294; nor can Class's allegations against Captain Montgomery be properly understood as raising a simple conditions-of-confinement claim.   In dismissing Class's Section 1983 claims based on these mischaracterizations, the district court failed to "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff[]." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 634 (5th Cir. 2014) (citation omitted).

III.      Finally, the district court erred in holding that Class's official-capacity claims for damages under the ADA and RA are barred by sovereign immunity.   The ADA contains "an unequivocal expression of Congress's intent to abrogate state sovereign immunity," *United States v. Georgia*, 546 U.S. 151, 154 (2006), and that

11

abrogation is, as this Court has recognized, constitutionally valid with respect to claims based on misconduct that violates both the ADA and the Fourteenth Amendment. *See Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 617 (5th Cir. 2020). Because Class's ADA claims involve "conduct substantially related to [his] Eighth Amendment claims," the TDCJ's sovereign immunity is abrogated. *Valentine*, 993 F.3d at 281.

Moreover, the TDCJ has separately waived its sovereign immunity from suit under the RA by accepting federal financial assistance. *See* 42 U.S.C. § 2000d-7(a)(1); *Block*, 952 F.3d at 619. Class's *pro se* complaint sufficiently alleges that the TDCJ receives federal funds. Even if it did not, this Court can properly take judicial notice of that fact.

Because TDCJ officers may be sued for damages in their official capacities under the ADA and RA (in which case the suit proceeds against the TDCJ itself), Class has plausibly pleaded a claim against defendants Davis, Strong, and Lacox in addition to Captains Trevino and Montgomery. The district court thus erred in dismissing these "supervisory officials" from the case. ROA.133.

In sum: Class has sufficiently alleged a claim under the RA against the defendants in their official capacities, based on the TDCJ's failure to accommodate Class's disabilities. Sovereign immunity is no bar to that claim because the TDCJ waived its immunity by accepting federal funds. Class has also sufficiently alleged

12

a claim under the ADA against the defendants in their official capacities, also based on the TDCJ's failure to accommodate his disability. The ADA abrogates sovereign immunity with respect to Class's ADA claims because the wrongful conduct alleged is substantially related to Class's Eighth Amendment claims. Finally, Class has sufficiently pleaded that Captains Trevino and Montgomery violated the Eighth Amendment by ordering him to exceed his physical limitations (and punishing him for failing to do so), and he has therefore stated a claim under Section 1983 for damages against those defendants in their personal capacities.

## STANDARD OF REVIEW

This Court "reviews the district court's dismissal of . . . claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) de novo." *Smith v. Hood*, 900 F.3d 180, 184 (5th Cir. 2018). "Dismissals under . . . [section] 1915A(b)(1) . . . for failure to state a claim are reviewed de novo—the same standard applied to dismissals under Federal Rule of Civil Procedure 12(b)(6)." *Legate v. Livingston*, 822 F.3d 207, 209–10 (5th Cir. 2016).

## ARGUMENT

### I. THE DISTRICT COURT ERRED IN DISMISSING CLASS'S ADA AND RA CLAIMS BY APPLYING THE WRONG TEST FOR DISABILITY-BASED DISCRIMINATION.

"The ADA is a 'broad mandate' of 'comprehensive character' and 'sweeping purpose' intended 'to eliminate discrimination against disabled individuals.'" *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (quoting *PGA Tour*,

*Inc. v. Martin*, 532 U.S. 661, 675 (2001)).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, Section 504 of the RA—which is generally "interpreted *in pari materia*" with the ADA,[5] *Frame*, 657 F.3d at 223—mandates that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  Therefore, to state a claim under either the ADA or RA, a plaintiff must allege "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability."  *Miraglia v.*

---

[5] Because "the rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under § 504 of the Rehabilitation Act," *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005), "[t]he RA and the ADA are judged under the same legal standards," *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010), and "jurisprudence interpreting either section is applicable to both," *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (citation and alteration omitted).

*Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 574 (5th Cir. 2018) (citation omitted).

The district court assumed that Class had plausibly pleaded a qualifying disability, but dismissed Class's complaint for failure to state a claim on the ground that, in its view, Class had failed to allege sufficiently the second two prongs of his claim: "that he was denied the benefits of any services, programs, or activities" and that "he was discriminated against by reason of his disability." ROA.292. The Court offered only one reason: that Class "was treated the same as other inmates, *i.e.*, ordered to sit on the floor and threatened with disciplinary action when he failed to do so." ROA.292.

That was legal error. Because "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion," the ADA and RA "require[] the States to take reasonable measures to remove architectural and other barriers to accessibility." *Tennessee v. Lane*, 541 U.S. 509, 531 (2004); *Alexander v. Choate*, 469 U.S. 287, 301 (1985) (same with respect to the RA); *see also Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (holding that "both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals"). This Court has therefore "explained that a plaintiff can establish the third prong of the prima facie case—discrimination 'by reason of his disability'—

by showing that the defendants have failed to make reasonable accommodations." *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021).

As a result, the fact that Class was treated the same as inmates without disabilities does not foreclose his claims. To the contrary, that Class was ordered, under threat of disciplinary action, to perform the same tasks as other inmates—even though Class's disabilities made those tasks more painful or even impossible—supports Class's allegations that the TDCJ officers failed to reasonably accommodate his physical limitations. It also demonstrates that Class was "denied the benefits of services, programs, or activities" offered by the TDCJ—*e.g.*, access to safe housing and other facilities—on account of his disability.[6] *Miraglia*, 901 F.3d at 574 (citation omitted); *see Valentine*, 993 F.3d at 290 (explaining that, where prison provided "heightened hand hygiene service . . . through the additional soap and handwashing stations," wheelchair and walker-bound inmates were denied the benefits of that service because, "by virtue of having to use and touch a wheelchair

---

[6] It appears that the district court believed that Class failed to allege "that he was denied the benefits of any services, programs, or activities" because he was not *denied* anything—that is, because "he was treated the same as other inmates." ROA.292. To the extent the district court instead intended to hold that the TDCJ does not provide "any services, programs, or activities," it was mistaken. *See Frame*, 657 F.3d at 225 (explaining that "[t]he Rehabilitation Act . . . defines a 'program or activity' as 'all of the operations of . . . a local government'" and that this Court "interpret[s] Title II [of the ADA] and the Rehabilitation Act *in pari materia*").

or walker to propel themselves from handwashing stations to their cubicle, these inmates were unable to clean their hands like the other inmates").

Evaluated under the standards set by the ADA and RA and expounded upon by this Court, the complaint has sufficiently alleged that TDCJ officers violated the ADA and RA by failing to reasonably accommodate Class's disability. "A plaintiff proves a failure to accommodate by showing that the disability and its consequential limitations were known by the covered entity, and the entity failed to make reasonable accommodations." *Valentine*, 993 F.3d at 290. With respect to the medication-line incident, Class alleged that when an officer instructed him to sit on the floor facing the wall, he explained to the officer that he could not comply with his instructions on account of his injuries—thereby notifying the officer of his disability. ROA.13. Nevertheless, Class did the best he could: He faced the wall and got as low to the ground as possible, first by crouching and then by lying on the floor with his knees bent. ROA.13. Captain Montgomery, however, refused to permit that accommodation. She ordered Class to sit on the floor, even after Class told her that his back surgeries prevented him from doing so. As punishment for not sitting down—an action that Class alleges he is physically incapable of taking—Captain Montgomery forced Class to spend six hours in segregation. ROA.14. Class was thus punished for his disability and denied access to his normal housing assignment, a benefit available to other inmates. *See, e.g.*, *Epley v. Gonzalez*, 860

17

F. App'x 310, 314–15 (5th Cir. 2021) (unpublished per curiam) (prison housing is a "program or service" within the meaning of the ADA and RA).

Class also sufficiently alleged an unlawful failure to accommodate his disability when he was placed in quarantine. Class was ordered to move up to the third floor, then down to the second floor, then down to the first floor, then back up to the second floor again. ROA.15-16. Even though Class informed officers of his disabilities, he was required to carry all of his belongings, including a 20-pound mattress, while navigating the stairs with his cane. ROA.15-16. The officers made no attempt to arrange assistance for Class. ROA.15-16. When Class requested an accommodation, Captain Trevino informed him that he could receive no accommodation while in isolation; instead, Captain Trevino told Class that he would face disciplinary action if he did not climb the stairs as instructed.[7] ROA.16. As a result of the officers' refusal to provide a reasonable accommodation, Class was

---

[7] Nor is there any reason to suspect that Class's requested accommodations—*e.g.*, facing the wall without sitting, or climbing the stairs with assistance—were unreasonable. *See Smith v. Harris Cnty., Texas*, 956 F.3d 311, 317 (5th Cir. 2020) ("An accommodation is reasonable if it does not impose undue financial or administrative burdens or fundamentally alter the nature of the service, program or activity." (citation and internal quotation marks omitted)); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020) ("[A] disabled inmate's right to mobility within a prison is well-established."). In any event, the reasonableness of Class's proposed accommodation is a question of fact ill-suited to resolution on a motion to dismiss. *See Valentine v. Collier*, 978 F.3d 154, 165 (5th Cir. 2020) (noting that "the reasonable-accommodation inquiry is fact-specific").

again denied the benefits of safe, accessible prison facilities. *See Valentine*, 993 F.3d at 289 ("The Supreme Court has stated that a failure to accommodate 'such fundamentals as mobility . . . constitute[s] . . . denial of the benefits of the prison's services, programs, or activities.'" (some alterations in original) (quoting *United States v. Georgia*, 546 U.S. 151, 157 (2006))).

## II.     IN DISMISSING CLASS'S SECTION 1983 CLAIMS, THE DISTRICT COURT MISCONSTRUED THE COMPLAINT'S ALLEGATIONS.

It is well-established that, in reviewing the sufficiency of a complaint, the court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff[]." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 634 (5th Cir. 2014) (internal quotation marks omitted). That rule operates with special force in the context of *pro se* complaints, which "are held to less stringent standards than formal pleadings drafted by lawyers," *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) (citation omitted), and must "be construed liberally," *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). The district court failed to follow these requirements in dismissing Class's Section 1983 claims against Captains Trevino and Montgomery.

A.     Class's complaint sufficiently alleges that Captain Trevino violated the Eighth Amendment by forcing Class—who requires a cane for walking—to carry all his belongings and a 20-pound mattress up several flights of stairs, despite Trevino's knowledge that Class was medically restricted from doing so. *See* ROA.16. Relying

on this Court's decision in *McFadden v. Lucas,* 713 F.2d 143 (5th Cir. 1983), however, the district court held that Class failed to state a claim against Captain Trevino because (1) the complaint alleges that Trevino "threat[en]ed [Class] with disciplinary action," and (2) "mere threatening words do not rise to the level of an Eighth Amendment violation." ROA.294. In basing its dismissal solely on *McFadden*'s "threatening words" rule, the district court misread the complaint. The complaint does not allege that Captain Trevino violated the Eighth Amendment simply by threatening Class with discipline. Class was not merely threatened; he was actually commanded to carry his mattress up and down the stairs—as he has alleged, and as his compliance with Captain Trevino's command confirms. ROA.16.

To equate a direct command with a "mere threat[]," ROA.294, would be to treat a correctional officer's order as a simple suggestion. That cannot be right. Hence, although "a prison official's mere use of threatening language, without more," is not actionable, *Hudson v. Univ. of Tex. Med. Branch*, 441 F. App'x 291, 293 (5th Cir. 2011) (unpublished per curiam) (citing *McFadden*, 713 F.2d at 146), a command puts the inmate to a choice between complying or refusing to comply and facing discipline. When the inmate's compelled compliance with the command causes him "to suffer[] a concrete, tangible harm," that harm may give rise to an Eighth Amendment violation. *Id.*; *see also Garner v. Moore*, 536 F. App'x 446, 450 (5th Cir. 2013) (unpublished per curiam) (concluding that "[m]ere threats" to deny

plaintiff law library access were not actionable because the inmate "does not allege that he actually was denied access . . . or that the threats dissuaded him from seeking library access in the future"). This Court made that point clear in *McFadden*, in which it explained that a prisoner is not "entitled to a jury trial each time that he was threatened with violence by a prison guard, *even though no injury resulted*." 713 F.2d at 146 (emphasis added); *see also Wallace v. Owens*, 48 F. App'x 105 (5th Cir. 2002) (unpublished per curiam) (affirming dismissal of inmate's complaint alleging that officers "threatened to cause him bodily harm" because the plaintiff "failed to allege that he suffered from any physical injury, de minimis or otherwise").

But here Class *did* suffer physical injuries as a result of the officer's command. The complaint alleges that complying with Captain Trevino's commands exacerbated Class's injuries and caused him pain in his lower back. ROA.16. That is sufficient to state a claim under the Eighth Amendment, which is violated when a prison official "knows that [an] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Calhoun*, 312 F.3d at 734 (citation omitted). That may occur where, as here, an inmate is "forced to work beyond his medical limitations." *Id.*; *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989) (holding that, because "the constitutionality of a particular working condition must be evaluated in the light of the particular medical conditions of the complaining prisoner," prison officials' decision to "knowingly put

21

[an inmate] on a work detail which they knew would significantly aggravate his serious physical ailment . . . would constitute deliberate indifference to serious medical needs"); *accord Franklin v. Banks*, 979 F.2d 1330, 1332 (8th Cir. 1992) ("For prison officials knowingly to compel convicts to perform physical labor which is beyond their strength . . . constitutes an infliction of cruel and unusual punishment prohibited by the Eighth Amendment." (citation and alterations omitted)).

**B.**    Class also sufficiently alleged an Eighth Amendment claim against Captain Montgomery, who unreasonably punished Class for his inability to comply with an order beyond his physical capabilities.

To begin with, to the extent the district court construed Class's claim against Captain Montgomery as alleging nothing more than "mere threatening language and gestures," ROA.294, it erred.    The complaint not only alleges that Captain Montgomery commanded Class to "sit your ass up" and threatened to "drag [him] to the F-building," ROA.14, but it further alleges that Captain Montgomery *carried out that threat* when Class informed her that he could not sit on the floor due to his disabilities.    Captain Montgomery did not "mere[ly] threaten[]" Class, *McFadden,* 713 F.2d at 146; rather, she directed a subordinate officer to "pick [up] the plaintiff," "force[] [him] to cl[imb] stairs," and spend six hours in segregation, ROA.14.

Implicitly acknowledging that Captain Montgomery did more than simply *threaten* Class with discipline, the district court further observed that "prison

22

conditions may be restrictive and even harsh without running afoul of the Eighth Amendment." ROA.294 (quoting *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008)). That is true, but beside the point. Class does not claim that his conditions of confinement in segregation, in and of themselves, violated the Eighth Amendment. Instead, Class's Eighth Amendment claim rests on the fact that Captain Montgomery disciplined Class for failing to perform a task that he is physically incapable of performing. That is sufficient to raise a constitutional claim, as the Eighth Amendment may be violated when discipline lacks "a legitimate security purpose" and instead is "arbitrary, capricious or merely for the sake of punishment." *See McFadden*, 713 F.2d at 147; *see also Furtado v. Bishop*, 604 F.2d 80, 88 (1st Cir. 1979) (collecting cases in which "courts have indicated that segregated confinement amounts to cruel and unusual punishment . . . if it is imposed arbitrarily and without basis").

This Court's decision in *Jones v. Hearn*, 248 F. App'x 568 (5th Cir. 2007) (unpublished per curiam), is instructive. There, the Court held that an inmate's Eighth Amendment rights were violated when prison officials forced him to choose between accepting a medically unnecessary treatment or going into medical isolation. It did not matter whether the inmate's *conditions* of confinement in medical isolation would have comported with the Eighth Amendment; rather, the fact of confinement *itself* would have constituted cruel and unusual punishment. The

Court explained that "a prison official cannot subject a prisoner to cruel and unusual punishment just because the prisoner is afforded" a choice, as the inmate's "medical punishment would have been no less arbitrary had he chosen medical isolation instead of taking the medication." *Id.* at 572.

So too here.  If Captain Montgomery would have violated the Eighth Amendment by physically forcing Class into a seated position on the floor despite his disability, then she likewise violated the Eighth Amendment by punishing Class for his failure to comply with that order.  The district court therefore erred in considering only whether Class had stated a claim against Captain Montgomery for unconstitutional conditions of confinement, to the exclusion of the other theory of Eighth Amendment liability evident on the face of the complaint: that Class was arbitrarily punished for his medical inability to comply with Captain Montgomery's command.  *See, e.g.*, *Calhoun*, 312 F.3d at 734 (reversing magistrate judge's dismissal of inmate's Eighth Amendment claim because, "[t]hough the magistrate judge analyzed [the plaintiff's] claim as an excessive force claim," the Court concluded "that [the] complaint, at the very least, also alleges deliberate indifference").  Of course, the defendants may ultimately argue that Class's claim fails because "reasonable steps taken to enforce reasonable security needs in a prison are not violative of a prisoner's constitutional rights." *McFadden*, 713 F.2d at 147.  But that argument is a factual one, and at the motion-to-dismiss stage, it is premature

to conclude that Class "can prove no set of facts which would entitle him to relief" on his Eighth Amendment claim. *Moawad v. Childs*, 673 F.2d 850, 851 (5th Cir. 1982) (holding that, before dismissing a *pro se* complaint for failure to state a claim, a district court must consider "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under this complaint, indulgently read" (citation omitted)). Dismissal was therefore inappropriate.[8]

## III. THE DISTRICT COURT ERRED IN DISMISSING CLASS'S OFFICIAL-CAPACITY ADA AND RA CLAIMS.

The district court seemingly dismissed *all* of Class's official-capacity claims as barred by the Eleventh Amendment, even though the defendants never argued that they are immune from suits for damages under the ADA or RA.[9] *See* ROA.168 (arguing only that "Class' 42 U.S.C. *§ 1983 claims* against Defendants in their official capacities are barred" (emphasis added)). That was error. Sovereign immunity does not bar Class's claims for damages under either the ADA or RA, as

---

[8] At minimum, the district court erred in dismissing Class's claims with prejudice. *See Moawad*, 673 F.2d at 851 ("If dismissal of a pro se complaint is warranted, it should be without prejudice to allow an inmate to file an amended complaint."); *see also Pena v. United States*, 157 F.3d 984, 987 n.3 (5th Cir. 1998) ("Because . . . dismissals [of pro se complaints under Rule 12(b)(6)] are disfavored, a court should grant a *pro se* party every reasonable opportunity to amend."); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam) ("Generally a district court errs in dismissing a pro se complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend.").

[9] Class acknowledges that a plaintiff may not seek damages from defendants sued in their official capacities for constitutional violations under 42 U.S.C. § 1983.

immunity is abrogated with respect to Class's ADA claims and waived with respect to Class's RA claims.

**A.**     The ADA contains "an unequivocal expression of Congress's intent to abrogate state sovereign immunity." *Georgia*, 546 U.S. at 154. Specifically, the Act provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of" the ADA. 42 U.S.C. § 12202; *see also id.* § 12101(b)(4) (invoking "the sweep of congressional authority, including the power to enforce the fourteenth amendment . . . in order to address the major areas of discrimination faced day-to-day by people with disabilities"). In *United States v. Georgia*, the Court "established a three-part test for determining whether Title II [of the ADA] validly abrogates states' sovereign immunity." *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 617 (5th Cir. 2020). On "a 'claim-by-claim basis,'" a court must assess:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 617 (quoting *Georgia*, 546 U.S. at 159).

"Because the Eighth Amendment applies to the states through the Fourteenth Amendment, an ADA violation that is also an Eighth Amendment violation actually

violates the Fourteenth Amendment." *Valentine*, 993 F.3d at 281. As discussed above, *see supra* 19–25, Class alleges that his Eighth Amendment rights were violated when TDCJ officers (1) required him to climb several flights of stairs while carrying heavy objects, against medical advice; and (2) commanded him to perform a task he is physically incapable of performing, and punished him for failing to do so. Because Class's "ADA claim[s] involve[] conduct substantially related to [his] Eighth Amendment claims," "sovereign immunity is abrogated."[10] *Valentine*, 993 F.3d at 281.

> **B.** Even if the ADA had not abrogated sovereign immunity with respect to Class's ADA claims for damages, the TDCJ has separately waived immunity from suit under the RA. Section 2000d-7(a)(1) of Title 42 provides that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." Consequently, this Court has recognized that "[a] state entity waives

---

[10] Even if the officers did *not* violate the Fourteenth Amendment, sovereign immunity may nevertheless be abrogated. *See Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) ("If the State's conduct violated Title II but did not violate the Fourteenth Amendment, the court must then determine 'whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.'" (quoting *Georgia*, 546 U.S. at 159)). "Under *Georgia*," however, "only if a plaintiff has alleged conduct that violates Title II and does not violate the Fourteenth Amendment should a court determine whether Title II is valid § 5 legislation as to that class of conduct." *Block*, 952 F.3d at 617 n.11.

sovereign immunity under § 504 of the Rehabilitation Act by accepting federal financial assistance." *Block*, 952 F.3d at 619.

The complaint alleges that "any governmental department or agency receiving federal money is subject to [the] Rehabilitation Act" and names TDCJ officers, including the Director of the TDCJ's Correctional Institutions Division, as official-capacity defendants. ROA.26. Those allegations are sufficient—especially in light of courts' obligation to construe *pro se* complaints liberally, *see Johnson*, 999 F.2d at 100—to allege that the TDCJ receives federal funding. *See Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009) ("A Rule 12(b)(1) motion should be granted only 'if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction.'" (citation omitted)).

Indeed, defendants never argued below that the TDCJ receives no federal funding.[11]  *See* ROA.168. That makes good sense, since the TDCJ indisputably receives millions of dollars in federal funds each year, as evidenced by documents publicly available on the TDCJ's website.[12]  Therefore, even if this Court doubted

---

[11] The TDCJ commonly makes such a concession. *See, e.g.*, *Lee v. Dallas Cnty.*, No. 3:19-CV-2690, 2020 WL 7388602, at *5 (N.D. Tex. Dec. 16, 2020) (noting that the TDCJ did not "den[y] receipt of federal funding"); *Connors v. Hulipas*, No. 4:17-CV-1512, 2020 WL 12632013, at *6 (S.D. Tex. Feb. 7, 2020), *appeal dismissed sub nom. Connors v. Halupis*, 849 F. App'x 132 (5th Cir. 2021) (same), *appeal docketed*, No. 21-20598 (5th Cir. Nov. 16, 2021).

[12] *See, e.g.*, Texas Department of Criminal Justice, Agency Operating Budget 2022, at 7 (Aug. 27, 2021), https://www.tdcj.texas.gov/documents/bfd/FY2022_

the sufficiency of the complaint's federal-funding allegations, it could take judicial notice of those documents. *See, e.g.*, *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (taking judicial notice of contents of TDCJ handbook because the Court "may take judicial notice of the state's website"); *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015) (taking judicial notice of public records contained on the Mississippi Secretary of State's and the Virginia State Corporation Commission's websites); *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697, 701 n.5 (5th Cir. 2007) (taking judicial notice of budget documents submitted to the Texas Legislature). Either way, this Court should reverse the district court's dismissal of Class's RA claims.[13]

**C.** With respect to his ADA and RA claims, Class does not seek damages from any defendants in their individual capacities. *See Lollar v. Baker*, 196 F.3d

---

Operating_Budget.pdf; Texas Department of Criminal Justice, Agency Operating Budget 2021, at 6 (Aug. 14, 2020), https://www.tdcj.texas.gov/documents/bfd/FY2021_Operating_Budget.pdf; Texas Department of Criminal Justice, Agency Operating Budget 2020, at 7 (Aug. 21, 2019), https://www.tdcj.texas.gov/documents/bfd/FY2020_Operating_Budget.pdf.

[13] If nothing else, the district court plainly erred in dismissing Class's claims with prejudice, as "[c]laims barred by sovereign immunity are dismissed without prejudice, not with prejudice." *Block*, 952 F.3d at 620 (alteration in original; citation omitted). In other words, if this Court both (1) determines that the complaint fails to allege that the TDCJ receives federal funding, and (2) declines to take judicial notice of the fact that the TDCJ does receive federal funding, then it should at least vacate and remand with instructions to the district court to allow Class to amend his complaint.

603, 609 (5th Cir. 1999). Rather, Class's official-capacity claims against defendants Trevino, Montgomery, Davis (now Lumpkin[14]), Strong, and Lacox—all officers of the TDCJ—are suits against those defendants' offices. *See, e.g.*, *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 420 n.5 (5th Cir. 2017) ("It is well settled . . . that 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.'" (citation omitted)).[15] When the district court *sua sponte* dismissed Davis, Strong, and Lacox at the screening stage, however, it considered only whether the complaint had stated a claim against each defendant under Section 1983 in their *individual* capacities. *See* ROA.132-33. The district court never discussed whether those officers were proper defendants in their *official* capacities.

Defendants Davis, Strong, and Lacox—who are the Director of the TDCJ's Correctional Institutions Division, Warden of the TDCJ's Ellis Unit, and Assistant Warden of the Ellis Unit, respectively—each exercise supervisory authority on the TDCJ's behalf. Neither the district court nor the defendants themselves have offered

---

[14] Bobby Lumpkin was substituted for Lorie Davis, who he succeeded as Director of the TDCJ's Correctional Institutions Division. *See* Fed. R. App. P. 43(c).

[15] To the extent any party sued in his or her official capacity is not a suitable defendant, the proper course of action is to dismiss the improper defendant and substitute a more appropriate party. *See, e.g.*, *Morris v. Livingston*, 739 F.3d 740, 745 (5th Cir. 2014) (affirming district court order dismissing Texas Governor as defendant and substituting the executive director of the TDCJ in his official capacity).

any reason to doubt that these officials are adequate nominal representatives for purposes of answering Class's complaint against the TDCJ for its violations of the ADA and RA. Thus, to the extent the district court dismissed Class's official-capacity ADA and RA claims against defendants Davis, Strong, and Lacox, the district court erred.

## CONCLUSION

This Court should reverse the district court's order dismissing the complaint with prejudice.

Date: January 13, 2022                        Respectfully submitted,

                                             */s/ Sarah Weiner*

Oren Nimni                                   Ginger D. Anders
Samuel Weiss                                 Sarah Weiner*
RIGHTS BEHIND BARS                           MUNGER, TOLLES & OLSON LLP
416 Florida Avenue NW, #26152                601 Massachusetts Ave., NW
Washington, DC 20001                         Suite 500E
(202) 540-0029                               Washington, DC 20001
                                             P: (202) 220-1100
                                             F: (202) 220-2300
                                             Sarah.Weiner@mto.com

                                             *Admitted in New York only; Practicing under the
                                             supervision of District of Columbia Bar members

## CERTIFICATE OF SERVICE

I certify that on January 13, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.


Dated:  January 13, 2022

*/s/ Sarah Weiner*
Sarah Weiner

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7554 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point, Times New Roman.

 DATED:  January 13, 2022

*/s/ Sarah Weiner*
Sarah Weiner

# ADDENDUM

# **TABLE OF CONTENTS**

29 U.S.C. § 794 ................................................................................... A-1

42 U.S.C. § 1983 ................................................................................. A-2

42 U.S.C. § 2000d-7 ........................................................................... A-3

42 U.S.C. § 12101(b) .......................................................................... A-3

42 U.S.C. § 12132 ............................................................................... A-4

42 U.S.C. § 12202 ............................................................................... A-4

## 29 U.S.C. § 794
## Nondiscrimination under Federal grants and programs

### (a) Promulgation of rules and regulations

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

### (b) "Program or activity" defined

For the purposes of this section, the term "program or activity" means all of the operations of--

**(1)(A)** a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

**(B)** the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;

**(2)(A)** a college, university, or other postsecondary institution, or a public system of higher education; or

**(B)** a local educational agency (as defined in section 7801 of Title 20), system of career and technical education, or other school system;

**(3)(A)** an entire corporation, partnership, or other private organization, or an entire sole proprietorship--

**(i)** if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or

**(ii)** which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or

**(B)** the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship; or

**(4)** any other entity which is established by two or more of the entities described in paragraph (1), (2), or (3);

any part of which is extended Federal financial assistance.

**(c) Significant structural alterations by small providers**
Small providers are not required by subsection (a) to make significant structural alterations to their existing facilities for the purpose of assuring program accessibility, if alternative means of providing the services are available. The terms used in this subsection shall be construed with reference to the regulations existing on March 22, 1988.

**(d) Standards used in determining violation of section**
The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

**42 U.S.C. § 1983**
**Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any

Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## 42 U.S.C. § 2000d-7
## Civil rights remedies equalization

**(a) General provision**

**(1)** A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

**(2)** In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

**(b) Effective date**

The provisions of subsection (a) shall take effect with respect to violations that occur in whole or in part after October 21, 1986.

## 42 U.S.C. § 12101
## Findings and purpose

\* \* \*

**(b) Purpose**

It is the purpose of this chapter--

**(1)** to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

**(2)** to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

**(3)** to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

**(4)** to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

## 42 U.S.C. § 12132
### Discrimination

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

## 42 U.S.C. § 12202
### State immunity

A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in[16] Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

---

[16] So in original. Probably should be "in a".